UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
RICHARD G. BIRCHALL,                          Chapter 7
        DEBTOR.                            Case No. 12-31578-WCH

SUZANNE D'AMOUR,
        PLAINTIFF,
                                              Adversary Proceeding
v.                                            No. 13-3006

RICHARD G. BIRCHALL,
        DEFENDANT.

**MEMORANDUM OF DECISION**

## I. INTRODUCTION

The matter before the Court is the "Plaintiff's Cross-Motion for Summary Judgment" (the "Motion for Summary Judgment") filed by the plaintiff, Suzanne D'Amour (the "Plaintiff"). The Plaintiff commenced the present adversary proceeding seeking a determination that the debt owed her by the debtor, Richard G. Birchall (the "Debtor"), is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and/or (a)(6).[1] In response to the Debtor's motion to dismiss on the basis of *res judicata*, which has already been denied as lacking merit, the Plaintiff filed the Motion for Summary Judgment, opposing dismissal and seeking judgment as a matter of law

---

[1] Unless expressly stated otherwise, all references to the "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et. seq.*

1

on the basis of the same state court judgment on which the Debtor relied. For the reasons set forth below, I will now enter an order granting the Motion for Summary Judgment.

## II. BACKGROUND

The facts are not in dispute.[2] The Debtor is an attorney who was disbarred in 2006.[3] The facts underlying his disbarment arose, in part, from his representation of the Plaintiff.[4] In February 1994, the Plaintiff sought the Debtor's assistance in protecting her assets from her late husband's creditors.[5] The Debtor advised the Plaintiff to move her assets into an offshore corporation in which she would have no apparent interest or control, but he led her to believe that she would in fact retain control over her assets.[6] The Plaintiff agreed to retain the Debtor to implement the plan they had discussed, for which he would receive a $30,000 fee.[7] The Plaintiff was to entrust her funds to the Debtor, and he was to arrange for $5,000 per month to be deposited from the funds into the Plaintiff's checking account.[8]

---

[2] Pursuant to Local Rule 56.1 of the United States District Court for the District of Massachusetts, adopted and made applicable to proceedings in the Bankruptcy Court by Massachusetts Local Bankruptcy Rule 7056-1, motions for summary judgment must include "a concise statement of material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions, and other documentation." LR, D. Mass 56.1. All referenced documents must be filed as exhibits to the motion or opposition. *Id.* Material facts set forth in the moving party's statement are deemed admitted for purposes of summary judgment if not controverted by an opposing statement. *Id.* While the Plaintiff filed a statement pursuant to Local Rule 56.1 (the "Plaintiff's Statement of Facts") with citations to supporting exhibits, *see* "Statement of Undisputed Material Facts in Support of Plaintiff's Cross-Motion for Summary Judgment," Docket No. 43, the Debtor filed neither an opposition to summary judgment nor an opposing statement of facts. Accordingly, the facts contained within the Plaintiff's Statement of Facts are deemed admitted for the purposes of this motion.

[3] Plaintiff's Statement of Facts, Docket No. 43 at ¶ 1.

[4] *Id.* at ¶ 2.

[5] *Id.* at ¶ 5a.

[6] *Id.* at ¶ 5b.

[7] *Id.* at ¶ 5c.

[8] *Id.*

2

To effectuate his plan, the Debtor formed a Delaware corporation known as Bay Investments, Inc. ("Bay Investments"), naming himself the president, vice president, and chairman of the board of directors.[9] Although the Plaintiff had no interest in Bay Investments, she, at the Debtor's direction, transferred several pieces of real property to it on March 15, 1994.[10] Two days later, on March 17, 1994, the Debtor formed a Bahamian corporation called Bay Partners, Limited ("Bay Partners"), in which he and the Plaintiff were stockholders, officers, and directors.[11] On or about June 1, 1994, however, the Debtor transferred the Plaintiff's interest in Bay Partners to Bay Investments without her knowledge or consent.[12]

Between April 5, 1994 and August 15, 1994, the Plaintiff transferred more than $2,000,000 to the Debtor, who deposited the money into his attorney trust account.[13] On May 12, 1994, the Debtor wired $1,300,000 of the Plaintiff's funds from his attorney trust account to a Bahamian bank account in the name of Bay Partners for which he was the sole signatory (the "Bay Partners Account").[14] On August 14, 1994, the Debtor wired an additional $550,000 of the Plaintiff's funds from his attorney trust account to the Bay Partners Account.[15] In July 1997, the Debtor opened a bank account on Cape Cod using his mother's social security number (the "Cape Cod Account") and transferred $75,000 of the Plaintiff's funds into it from his attorney

---

[9] *Id.* at ¶ 5e.

[10] *Id.* at ¶¶ 5d and e.

[11] *Id.* at ¶ 5f.

[12] *Id.* at ¶ 5h.

[13] *Id.* at ¶ 5i.

[14] *Id.* at ¶¶ 5g and j.

[15] *Id.* at ¶ 5j.

trust account.[16] Only the Debtor and his mother were signatories on the Cape Cod Account.[17] From 1997 to 2000, the Debtor transferred more than $625,000 of the Plaintiff's funds from the Bay Partners Account into the Cape Cod Account, which he used for personal or business expenses.[18]

After making several demands for an accounting of the assets she had entrusted to him, which the Debtor refused, the Plaintiff filed a complaint against him in Barnstable County Superior Court (the "Superior Court Complaint") on December 20, 2000.[19] Based on the foregoing facts, the Superior Court Complaint contained four counts for monetary relief, namely, breach of fiduciary duty, misrepresentation, conversion, and unjust enrichment, and requested injunctive and declaratory relief.[20]

Shortly after the Plaintiff filed the Superior Court Complaint, the Debtor formed yet another corporation, opened a bank account in its name, and transferred funds from the Bay Partners Account and the Cape Cod Account into this new account, intending to conceal from the Plaintiff what remained of the funds she had entrusted to him.[21] Then, sometime in 2001, the Debtor transferred funds from the Bay Partners Account to a Swiss bank account.[22]

The Debtor filed numerous pleadings in the superior court action, including a motion to dismiss, an answer, an amended answer, a motion for summary judgment, and a motion to set

---

[16] *Id.* at ¶ 5k.

[17] *Id.*

[18] *Id.* at ¶ 5l.

[19] *Id.* at ¶ 6.

[20] *Id.* at ¶ 7.

[21] *Id.* at ¶ 8.

[22] *Id.* at ¶ 9.

4

aside certain transfers.[23] Nevertheless, the Debtor repeatedly failed to comply with the superior court's discovery orders, including an order to waive privilege concerning the Bay Partners Account dated February 18, 2004 and orders to produce documents dated June 15, 2004, October 5, 2004, and January 11, 2005.[24] On March 4, 2005, the superior court, as a sanction, entered a default judgment in favor of the Plaintiff (the "Default Judgment") as to liability only, citing the Debtor's refusal to comply with discovery requests and his repeated violations of court orders.[25] The superior court conducted a hearing on the assessment of damages in which the Debtor participated; the Debtor also submitted post-hearing affidavits and documents with leave of the superior court.[26] On June 14, 2005, the superior court issued an assessment of damages of $2,752,934.[27]

On August 1, 2005, the Office of Bar Counsel for the Commonwealth of Massachusetts filed with the Board of Bar Overseers of the Supreme Judicial Court (the "BBO") a petition for discipline based, in part, on the same facts and circumstances as the superior court action.[28] The Debtor did not file an answer, and, pursuant to BBO rules, the allegations in the petition were deemed admitted.[29] On July 18, 2006, the Supreme Judicial Court of Massachusetts entered a

---

[23] *Id.* at ¶ 10.

[24] *Id.* at ¶ 11.

[25] *Id.* at ¶¶ 12-14.

[26] *Id.* at ¶ 16.

[27] *Id.* at ¶ 18.

[28] *Id.* at ¶ 2; Affidavit of Pamela A. Harbeson, Esq. in Support of Plaintiff's Cross-Motion for Summary Judgment (the "Harbeson Affidavit"), Docket No. 45 at Ex. C.

[29] Plaintiff's Statement of Facts, Docket No. 43 at ¶ 3.

judgment of disbarment, finding, *inter alia*, that the Debtor converted the Plaintiff's funds to his own personal or business use with the intent to deprive her of the funds.[30]

On December 20, 2006, the Plaintiff filed a supplementary process action in the Orleans District Court of the Trial Court of Massachusetts that included a charge of fraud.[31] After nine days of evidentiary hearings, in which the Debtor actively participated, the district court found that the Debtor had the ability to pay the judgment against him.[32] Specifically, the district court found that the Debtor had received over $2,000,000 in a fiduciary capacity from the Plaintiff and had not returned any portion of the funds, instead manipulating the money between various bank accounts in the United States and the Bahamas.[33] Additionally, the district court entered a "Memorandum and Order Regarding Fraud Charges Brought Pursuant to G.L c. 224, §19" (the "Fraud Order"), finding that the Debtor had "fraudulently conveyed, concealed or otherwise disposed of [the Plaintiff's funds] with the intent to either secure [the funds] to his own use or to defraud [the Plaintiff]."[34]

The Debtor was imprisoned by order of the district court for refusing to pay the damages he owed.[35] During his incarceration, the Plaintiff intercepted phone calls in which the Debtor attempted to access funds located in a Swiss bank account.[36] The Plaintiff was able to trace funds that she had initially entrusted to the Debtor to the Swiss bank account and recovered part

---

[30] Harbeson Affidavit, Docket No. 45 at Ex. D.

[31] Plaintiff's Statement of Facts, Docket No. 43 at ¶¶ 21-22.

[32] *Id.* at ¶¶ 23-24.

[33] *Id.* at ¶ 24.

[34] *Id.* at ¶¶ 25-26.

[35] *Id.* at ¶ 27.

[36] *Id.*

6

of her judgment therefrom.[37] The Debtor filed two bankruptcy petitions in 2007, both of which I dismissed pursuant to 11 U.S.C. § 305 in light of the ongoing supplementary process action.[38] On November 2, 2010, the district court entered an order in which it again found that the Debtor had the ability to pay the Plaintiff's judgment against him.[39] Specifically, the district court found that a "significant part of the millions of dollars of which [the Debtor] once held sway—including nearly $3 million [the Debtor] obtained from [the Plaintiff] for 'investment'—is extant and remains available to him."[40]

The Debtor filed the present bankruptcy case on October 19, 2012.[41] The filing occurred four days before the next scheduled hearing in the supplementary process action.[42] As of the petition date, the Plaintiff claims that the Debtor owes her $2,500,000, plus accrued interest; whereas the Debtor scheduled his debt to the Plaintiff as $1,172,935 on his bankruptcy petition.[43] On January 24, 2013, the Plaintiff filed the present adversary proceeding asserting that her debt was excepted from discharge pursuant to § 523(a)(2)(A), (a)(4), and/or (a)(6). Notably, the Plaintiff alleged all of the grounds for nondischargeability contained in § 523(a)(4), asserting that her debt was for money obtained by fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

---

[37] *Id.*

[38] *Id.* at ¶ 28; *see In re Birchall*, Case No. 07-13232-WCH; *In re Birchall*, Case No. 07-17294-WCH.

[39] Plaintiff's Statement of Facts, Docket No. 43 at ¶ 31.

[40] *Id.*

[41] The Debtor's case was originally assigned to Judge Henry J. Boroff of this district, but he transferred it to me upon the filing of the present adversary proceeding in light of my familiarity with the history of this dispute.

[42] *Id.* at ¶ 32.

[43] *Id.* at ¶ 33.

On June 12, 2013, the Debtor filed a nonsensical motion to dismiss, arguing that the Default Judgment *against him* precluded the Plaintiff's claim on the grounds of *res judicata*.[44] On July 10, 2013, the Plaintiff filed the Motion for Summary Judgment, opposing dismissal and arguing that the Default Judgment conclusively established the grounds that warrant excepting her debt from discharge.[45] After a continuance at the request of the Debtor, the motion to dismiss and the Motion for Summary Judgment were scheduled for hearing on September 18, 2013.[46] On the eve of the continued hearing, however, the Debtor requested another continuance. Finding the Debtor's request untimely and the motion to dismiss lacking in merit, I denied the Debtor's motion and took the Motion for Summary Judgment under advisement.[47] To date, the Debtor has not filed an opposition to the Motion for Summary Judgment, nor sought leave to do so late.

### III. POSITION OF THE PARTY

The Plaintiff argues that the doctrine of collateral estoppel gives the Default Judgment preclusive effect in this proceeding. The Plaintiff contends that the general rule that default judgments do not have preclusive effect should not apply because the Debtor participated in the superior court action for over four years and had a full and fair opportunity to litigate the issues therein. Next, the Plaintiff asserts that, under Massachusetts law, when a court enters a default judgment, the factual allegations of a complaint are accepted as true. Thus, she argues that the Default Judgment conclusively establishes not only that the Debtor committed breach of fiduciary duty, conversion, and misrepresentation, but also the facts alleged in the Superior Court

---

[44] *See* Docket No. 25.

[45] *See* Docket Nos. 41 and 42.

[46] *See* Docket No. 52.

[47] *See* Docket No. 57.

Complaint. The Plaintiff additionally asks that I apply collateral estoppel to the district court's findings in the supplementary process action, and the BBO's findings in the petition for discipline that resulted in the Debtor's disbarment.

The Plaintiff asserts that the Default Judgment, the orders from the supplementary process action, and the petition for discipline clearly establish that the Debtor received assets from her in a fiduciary capacity, as her attorney, and fraudulently converted those assets to his own use. Accordingly, the Plaintiff argues the debt is one resulting from fraud or defalcation while acting in a fiduciary capacity and is excepted from discharge pursuant to § 523(a)(4). The Plaintiff did not expressly seek summary judgment on any other theory of § 523(a)(4) despite having alleged others in her complaint. The Plaintiff additionally contends that the Default Judgment establishes that the Debtor obtained money from her by fraud or falsehood pursuant to § 523(a)(2) and willfully and maliciously caused her injury pursuant to § 523(a)(6).

## IV. DISCUSSION

### A. The Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[48] A dispute is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party.[49] A fact is material if it has the potential to determine the outcome of the suit under the governing law.[50] The moving party bears the initial burden of demonstrating that "the pleadings, the discovery and disclosure

---

[48] Fed. R. Civ. P. 56(a), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

[49] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[50] *Id.*

9

materials on file, and any affidavits show that there is no genuine issue as to any material fact."[51] The United States Court of Appeals for the First Circuit has further explained that the absence of a material factual dispute is a "condition necessary," but not a "condition sufficient" to summary judgment.[52] Even in the absence of an opposition, the moving party must demonstrate that it is entitled to judgment as a matter of law.[53]

    B. <u>Collateral Estoppel</u>

I first address what effect, if any, the Default Judgment has on the current proceeding. "In determining whether a party should be estopped from relitigating an issue decided in a prior state court action, the bankruptcy court must look to that state's law of collateral estoppel."[54] Accordingly, Massachusetts law governs whether collateral estoppel applies to the Default Judgment. "Under Massachusetts law, in order for collateral estoppel to apply, a court must determine that: (1) there was a valid and final judgment on the merits; (2) the party against whom estoppel is asserted was a party to the prior litigation; (3) the issue in the prior adjudication is identical to the issue in the current litigation; and (4) the issue in the prior litigation was essential to the earlier judgment."[55] "The 'guiding principle' in determining whether to allow a party the use of collateral estoppel is whether the party against whom it is asserted had a 'full and fair opportunity to litigate the issue in the first action or [whether] other

---

[51] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[52] *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 764 (1st Cir.1994).

[53] *Id.*

[54] *Backlund v. Stanley-Snow (In re Stanley-Snow)*, 405 B.R. 11, 18 (B.A.P. 1st Cir. 2009).

[55] *McHeffey v. Pereira (In re Pereira)*, 428 B.R. 276, 281 (Bankr. D. Mass. 2010) (*citing Alba v. Raytheon Co.*, 441 Mass. 836, 843 (2004)).

10

circumstances justify affording him an opportunity to relitigate the issue.'"[56] Default judgments generally do not have preclusive effect, because the issues therein were not actually litigated.[57] Nevertheless, courts have recognized an exception to this rule when the party against whom the default judgment was entered "substantially participated" in the action.[58]

Here, I find that collateral estoppel applies to the Default Judgment. The Debtor actively participated in the state court litigation for over four years, filing numerous pleadings and motions during that time. The superior court entered the Default Judgment as a sanction due to the Debtor's refusal to comply with discovery requests and repeated violations of court orders. Accordingly, this is not a "typical default case" in which "no answer was filed and the defendant's participation was on the periphery of the case."[59] To the contrary, the Debtor's participation was substantial, though recalcitrant. Therefore, I find that the exception to the actual litigation requirement is satisfied, and the Default Judgment is a valid and final judgment on the merits of the action.[60]

The remaining elements are easily satisfied. First, the Debtor was a party to the superior court action. Next, the issues in the superior court action were identical to the issues at hand. The Default Judgment established the Debtor's liability for breach of fiduciary duty, conversion, and misrepresentation in his dealings with the Plaintiff. Each of these claims was premised on the same basic facts: (1) that the Plaintiff and the Debtor, her attorney, entered an agreement that

---

[56] *Treglia v. MacDonald*, 430 Mass. 237, 241 (1999) (citation omitted).

[57] *Id.*

[58] *See In re Stanley-Snow*, 405 B.R. 19-21; *Int'l Strategies Grp., Ltd. v. Pomeroy (In re Pomeroy)*, 353 B.R. 371, 377 (Bankr. D. Mass. 2006).

[59] *See In re Stanley-Snow*, 504 B.R. at 20.

[60] *See id.* at 21.

11

he would protect her assets; (2) that the Plaintiff entrusted over $2,000,000 to the Debtor; (3) that the Debtor removed the assets from the Plaintiff's control; and (4) that the Debtor converted the funds to his personal use.[61] These exact facts underlie the Plaintiff's claim that her debt is excepted from the Debtor's discharge. Finally, these facts were essential to the finding that the Debtor committed breach of fiduciary duty, conversion, and misrepresentation, as they were the only basis alleged to support those claims. Accordingly, the issues decided in the Default Judgment are entitled to preclusive effect, and the above facts are conclusively established in this proceeding.

The same holds true for the Fraud Order. Again, the issues and parties in the supplementary process proceeding were identical to this proceeding. Moreover, the Debtor actively participated in the nine day evidentiary hearing that preceded entry of the Fraud Order. Lastly, a finding of fraudulent intent was essential to the Fraud Order, as the Debtor could not have been found guilty of fraud under Mass. Gen. Laws ch. 224, § 19 otherwise.[62] Therefore, the Fraud Order's finding concerning the Debtor's fraudulent intent is also entitled to preclusive effect in this proceeding.

C. Section 523(a)(4)

Section 523(a)(4) provides, in relevant part, "[a] discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a

---

[61] *See* the Superior Court Complaint, Docket No. 25 at Ex. A, ¶¶ 37-51.

[62] Mass. Gen. Laws ch. 224, § 19 provides, in relevant part:

> At any time pending the examination of the defendant or debtor, the plaintiff or creditor or a person in his behalf may allege charges . . . That, since the debt was contracted or the cause of action accrued, the defendant or debtor has fraudulently conveyed, concealed or otherwise disposed of the whole or a part of his or its property, with intent to secure it to his or its own use or to defraud his or its creditors . . . .

Mass. Gen. Laws ch. 224, § 19.

fiduciary capacity, embezzlement, or larceny." In support of the Motion for Summary Judgment, the Plaintiff argued that the Debtor's actions constituted fraud or defalcation in a fiduciary capacity. If relying on the fraud or defalcation prong of § 523(a)(4), the party objecting to the debtor's discharge must show: (1) that the debt "result[s] from a fiduciary's defalcation under an express or technical trust;" (2) that the debtor "acted in a fiduciary capacity with respect to the trust;" and (3) that the transaction in question is a "defalcation [or fraud] within the meaning of bankruptcy law."[63]

From the outset, I note that the alleged fraudulent or defalcating act is that the Debtor converted assets which the Plaintiff had entrusted to him to his own use—in a word, embezzlement. Traditionally, embezzlement is "the fraudulent conversion of the property of another by one who is already in lawful possession of it."[64] A party objecting to a debtor's discharge on the basis of § 523(a)(4) embezzlement must show: "(1) the property was rightfully in the possession of the debtor; (2) the debtor appropriated the property for a use other than which it was entrusted; and (3) the circumstances indicate fraud."[65] Fraudulent intent can be established by a showing of scienter—i.e., that the debtor knew he was converting the property for an unauthorized use.[66] Therefore, based on the Plaintiff's allegations, if she satisfies the third element of the fraud or defalcation analysis, she will have established the existence of an embezzlement under § 523(a)(4), and I need go no further.[67]

---

[63] *Raso v. Fahey (In re Fahey)*, 482 B.R. 678, 687 (B.A.P. 1st Cir. 2012) (internal quotations omitted).

[64] *Sherman v. Potapov (In re Sherman)*, 603 F.3d 11, 13 (1st Cir. 2010) (*quoting United States v. Young*, 955 F.2d 99, 102 (1st Cir.1992)).

[65] *Lento v. Marshall (In re Marshall)*, 497 B.R. 3, 12 (Bankr. D. Mass. 2013) (internal quotations omitted).

[66] *See In re Sherman*, 603 F.3d at 13.

[67] The Debtor is not prejudiced by a finding of embezzlement, as opposed to fraud or defalcation while acting in a fiduciary capacity, because it does not require any findings beyond what is necessary to rule in the Plaintiff's favor

Here, the undisputed facts clearly establish each element of embezzlement. First, the Plaintiff voluntarily entrusted three parcels of real property and over $2,000,000 to the Debtor for him to safeguard. Thus, the assets were initially rightfully in the Debtor's possession. Second, by removing the Plaintiff's assets from her control, converting them to his own use, and refusing to return them—all contrary to their agreement—the Debtor appropriated the property for a use other than that for which it was entrusted. Finally, the superior court expressly found that the Debtor acted with fraudulent intent in the Fraud Order.

Accordingly, I find that the Debtor's debt to the Plaintiff is excepted from discharge pursuant to § 523(a)(4) as a debt for embezzlement. Because I find that the debt is excepted from discharge pursuant to § 523(a)(4), it is unnecessary to determine the validity of the Plaintiff's claims under §§ 523(a)(2)(A) and (a)(6).

## V. CONCLUSION

In light of the foregoing, I will enter an order granting the Motion for Summary Judgment.

*[signature]*

_____
William C. Hillman
United States Bankruptcy Judge

Dated: November 18, 2013

Counsel Appearing:

    Richard Birchall, *Pro se*
    Pamela A. Harbeson, Looney and Grossman, Boston, MA
        for Suzanne D'Amour

---

on the latter basis. Moreover, the Plaintiff alleged embezzlement in her complaint. In any event, the Debtor failed to oppose the Motion for Summary Judgment, and the Default Judgment and the Fraud Order preclude him from disputing the facts that establish embezzlement under § 523(a)(4).